IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| MARTAVIOUS GATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:23-cv-25 (MTT) |
| | ) |
| LACHAKA MCKENZIE, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

In this 42 U.S.C. § 1983 action, Plaintiff Martavious Gates alleges that Defendant Lachaka McKenzie was deliberately indifferent to a serious medical need. Doc. 1. McKenzie moves to dismiss Gates' complaint for failure to exhaust, or, in the alternative, for summary judgment. Docs. 25, 27. For the reasons that follow, McKenzie's motion (Docs. 25, 27) is **DENIED**.

**I. BACKGROUND**[1]

Gates was housed by the Georgia Department of Corrections at Macon State Prison ("MSP") when the alleged events giving rise to this action occurred. Doc. 1 at 1. During the relevant time, McKenzie was the Deputy Warden for Care and Treatment at MSP. Doc. 25-3 ¶ 2.

---

[1] Gates did not file a statement of material facts pursuant to Local Rule 56, and therefore, the facts in McKenzie's statement are deemed admitted. M.D. Ga. L.R. 56. Still, the Court further confirmed that the facts were supported by the record by "review[ing] all of the evidentiary materials submitted in support of" McKenzie's motion. *United States v. One Piece of Real Prop'y*, 363 F.3d 1099, 1101-02 (11th Cir. 2004). McKenzie's statement of material facts, however, consists of six short paragraphs and only facts relating to McKenzie's position at Macon State Prison, rendering it largely unusable for the Court's purposes. For these reasons, the Court cites to the complaint and other evidentiary materials in the record.

In April 2022, Gates claims he jumped down off the top bunk of his bed and immediately "went straight to floor, hearing a loud crack." Docs. 1 at 5; 23-1 at 16. With his right foot in "sever[e] pain," Gates went to medical at MSP, where a nurse wrapped his foot in a bandage, gave him two pain pills, and sent him back to his dorm. Doc. 1 at 5. Following this incident, Gates claims that he "informed [McKenzie] on numerous occasions that [his] broken foot was causing [him] pain." *Id*. In May 2022, Gates saw a nurse practitioner at MSP, who determined that Gates had a calcaneal fracture in his right foot. Doc. 22-3 at 2; 23-1 at 2, 13, 89; 25-4 at 18. The nurse practitioner ordered an urgent consult for orthopedic surgery, with the note: "please allow urgent evaluation[] with foot/ankle specialist injury is 2 weeks old." Doc. 23-1 at 2, 13, 89.

On June 30, 2022, about two months after his alleged injury, Gates filed his first grievance, stating "[s]ince the above date mentioned, [the 7th, 8th, or the 9th of May 2022,] I've yet to receive any medical attention." Doc. 25-4 at 18. On July 6, 2022, a doctor at MSP issued a second order for urgent orthopedic consult regarding Gates' calcaneal fracture. Doc. 23-1 at 6. About two weeks later, Gates' mother called to speak with McKenzie on the phone about his foot pain. Doc. 25-4 at 7.

On August 18, 2022, Gates was seen by medical at Augusta State Medical Prison ("ASMP"). Docs. 23-1 at 16, 26-28, 91-92. The doctor noted swelling, a healed calcaneal fracture, and disuse osteoporosis without new fracture. *Id*. Gates' grievance was subsequently rejected because it was "filed out of time frames as outlined in the policy,"[2] and Gates appealed. Docs. 22-3 at 2; 25-4 at 32-33. Gates' mother called

---

[2] GDC Standard Operating Procedure ("SOP") 227.02 requires inmates to file an "original grievance" within ten days of the issue giving rise to the grievance. GDC SOP 227.02 https://gdc.georgia.gov/organization/about-gdc/agency-activity/policies-and-procedures/227-policy-facilities-conditions (May 10, 2019).

McKenzie a second time about Gates' foot pain, and Gates saw the nurse practitioner again. Docs. 22-3 at 7; 23-1 at 5. The nurse practitioner observed "right lateral ankle pain > 4 mos" and noted that she would request an MRI. Doc. 23-1 at 5.

Gates presumably drafted his complaint on November 16, 2022, the date he signed it. Doc. 1 at 1. He stated that he had appealed the rejection of his grievance and was "yet to receive response from [the] appeal grievance." Doc. 1 at 4-7. On December 19, 2022, Gates received the denial of his grievance appeal. Doc. 25-4 at 15. On January 20, 2023, Gates' complaint was postmarked. *Id.* at 29; Doc. 1-1 at 1. The complaint was filed with the Court three days later. Doc. 1. Gates alleges that due to the delay in receiving medical treatment, his foot must be re-broken because it has not been healing properly. *Id.* at 6. He further alleges that McKenzie was deliberately indifferent to his serious medical need. *Id*. at 5-6. McKenzie moves to dismiss for failure to exhaust, or, in the alternative, for summary judgment. Docs. 25; 27.

## II. STANDARD

### A. Motion to Dismiss for Failure to Exhaust

The PLRA requires an inmate, as a "precondition to an adjudication on the merits," "to exhaust all administrative remedies before filing his § 1983 suit." *Bryant v. Rich*, 530 F.3d 1368, 1372 (11th Cir. 2008); *Whatley v. Smith*, 898 F.3d 1072, 1074 (11th Cir. 2018); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense … is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Rich*, 530

F.3d at 1374-75 (internal quotations and citations omitted).  Where factual disputes exist on the question of exhaustion, the Court may consider facts outside the pleadings and resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record.  *Id*. at 1376.

"[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' … rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)).

*1. The GDC's grievance procedure*

The grievance procedure applicable here is found in GDC Standard Operating Procedure ("SOP") 227.02, which requires inmates to follow a two-step process to exhaust their grievances.  GDC SOP 227.02, 8 https://gdc.georgia.gov/organization/about-gdc/agency-activity/policies-and-procedures/227-policy-facilities-conditions (May 10, 2019).  First, an inmate must file an "original grievance" within ten days of the issue giving rise to the grievance.  *Id*.  For good cause, inmates may file outside of the ten-day window.  *Id*.  The original grievance is then screened by prison staff, and typically either rejected or accepted for processing.  *Id*. at 9.  A response of some kind is due within 40 days of the date of a grievance's submission, with the possibility of a ten-day extension on written notice.  *Id*. at 11.  Upon expiration of the response period or upon an inmate's receipt of a response, an inmate must proceed to step two, which requires the inmate to file within seven days, a "central

office appeal." *Id*. at 14.  The GDC Commissioner then has 120 days to respond to the appeal.  *Id*. at 15.

### 2. The Turner *analysis*

To determine whether an inmate properly exhausted his claims, courts in the Eleventh Circuit follow the two-step process mandated by *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008).  Under *Turner*'s first step, the court must look to the factual allegations in the defendant's motion and those in the plaintiff's response, and if they conflict, the court takes the plaintiff's version of the facts as true.  *Id.* at 1082.  "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id*.  If the complaint is not subject to dismissal based on the plaintiff's version of the facts, the court must proceed to the second step, where it makes specific findings of fact to resolve the disputed factual issues related to exhaustion.  *Id.*  At the second step, it is the defendant's burden to establish that the plaintiff failed to exhaust available administrative remedies.  *Id.*

### B. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is not genuine unless, based on the evidence presented, "a reasonable jury could return a verdict for the nonmoving party."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The movant may support its assertion that a fact is undisputed by "citing to particular parts of

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id*. at 1438 (quoting *Celotex*, 477 U.S. at 325) (alterations in original). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id*.

The burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable or is not significantly probative' of a disputed fact." *Id*. (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), "the court may … consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge …

[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. DISCUSSION

McKenzie argues she is entitled to dismissal of the case, or, in the alternative, summary judgment because (1) Gates failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, and (2) even if Gates had properly exhausted his administrative remedies, McKenzie was not deliberately indifferent to Gates' serious medical need because she is not responsible for medical decisions. Doc. 25-1 at 4-7. The Court disagrees.

**A. Failure to Exhaust**

McKenzie contends that Gates failed to exhaust for three reasons. Doc. 25-1 at 4-6; 27 at 1-4. First, McKenzie argues that "Gates's complaint, as pled, establishes that he did not exhaust the required administrative remedies prior to filing suit."[3] *Id*. at 5. Specifically, McKenzie argues that "Gates's complaint plainly states that his grievance was appealed to the "counselor level" and that he had not "yet . . . receive[d] response from that appeal grievance" when he dated his complaint. Docs. 25-1 at 5; 1 at 4. But Gates did not concede in his complaint that he failed to exhaust his administrative remedies because his complaint does not allege the date he filed his grievance appeal.[4] Thus, the complaint does not foreclose the possibility that 120 days had run since he filed his appeal. If that were the case, Gates could argue that the grievance process

---

[3] McKenzie apparently makes this "face of the complaint" argument because of her mistaken belief that a motion to exhaust is subject to the standard of review for Rule 12(b)(6) motions.

[4] A court may dismiss a complaint *sua sponte* for failure to exhaust only when it is clear on the face of the complaint that plaintiff has not exhausted available administrative remedies. *Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Wells v. Brown*, 58 F.4th 1347, 1356 (11th Cir. 2023).

was unavailable to him.  *See Whitington v. Ortiz*, 472 F.3d 804, 807-08 (10th Cir. 2007) ("[W]hen prison officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the PLRA"); *Lewis v. Washington*, 400 F.3d 829, 833 (7th Cir. 2002) ("refusing to interpret the PLRA as allowing prison officials "to exploit the exhaustion requirement through indefinite delay in responding to grievances") (quotation marks and citation omitted).  Because Gates did not concede that he failed to exhaust on the face of the complaint, the Court cannot *sua sponte* dismiss the case, and McKenzie's argument to the contrary fails.

Second, McKenzie argues that even if the Court looks beyond the complaint, Gates "filed this lawsuit well before the 120-day time period elapsed for the Central Office appeal response and before he even received the Central Office appeal response."  Doc. 27 at 2.  This argument turns on McKenzie's presumption that Gates "filed" his complaint on November 16, 2022, the date it was signed.  McKenzie does not address the fact that Gates' complaint was actually filed with the Court on January 23, 2023, well after the Central Office denied his appeal.  Doc. 1.  McKenzie cites no legal authority to establish the date Gates filed his complaint.  If she had, she presumably would have cited the general rule that a complaint in an inmate's § 1983 action is deemed filed when it is delivered to prison officials.  *Garvey v. Vaughn*, 993 F.2d 776, 783 (11th Cir. 1993).  She then presumably would argue that the Court should presume that Gates delivered his complaint to prison authorities on the day he signed it.

The last presumption is one the Court cannot make.  McKenzie bears the burden of proving the date Gates delivered his complaint because prison authorities "have the ability to establish the correct date through their logs."  *Id*. at 781 (citing *Houston v.*

*Lack*, 487 U.S. 266, 275 (1988)); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001). Absent evidence to the contrary in the form of prison logs or other records, the Court may assume that a complaint is delivered to prison authorities on the day the pro se prisoner signed it. *Washington*, 243 F.3d at 1301; *Natson v. United States*, 494 Fed. Appx. 3, 5-6 (11th Cir. 2012) (affirming the district court's finding that the date written on a pro se prisoner's complaint was not the date the complaint was delivered to prison officials, as established by prison records and routine practices).

The "date of delivery" presumption of filing is a rule intended to protect inmates from the all-too-common vagaries of prison mail. *See Garvey*, 993 F.2d at 780; *Houston*, 487 U.S. at 271. Thus, an inmate meets a filing deadline if he timely delivers a pleading to prison authorities for mailing. *Id*. The application of that rule here would turn the rule on its head. But even if the rule applies, the Court cannot presume that Gates delivered the complaint to prison authorities when he dated it—November 16, 2022—rather than some other time before it was postmarked on January 20, 2023. Docs. 1 at 7, 1-1 at 1; 25-4 at 12.

Again, McKenzie has the burden to establish the date Gates delivered his complaint to be filed. *Garvey*, 993 F.2d at 783; *Jones*, 549 U.S. at 216. If Gates delivered his complaint after December 19, 2022—the date he received the denial of his grievance appeal—he fully exhausted his administrative remedies. If Gates delivered his complaint before December 19, 2022, he failed to exhaust. The more than two-month delay between the day Gates dated his complaint and the date prison authorities mailed the complaint creates an issue of fact as to when Gates delivered his complaint

to prison authorities. McKenzie offers no evidence—such as prison mail logs—to meet her burden of proving when that delivery occurred.

Finally, McKenzie argues that even if Gates had waited to receive a response to his appeal, he failed to exhaust because the Central Office Appeal Response did not address his grievance on the merits. Doc. 27 at 3. However, the Court is required to find a grievance unexhausted under the PLRA only "[i]f a state's last administrative body denie[d] [the] grievance for *valid procedural reasons*." *Whatley v. Warden, Ware State Prison*, 802 F. 3d 1205, 1216 (11th Cir. 2015) (Vinson, J., concurring) (emphasis added). Here, the grievance was not denied for valid procedural reasons. SOP 227.02 requires an original grievance to be submitted within ten days of the issue giving rise to the grievance. In his original grievance, Gates complained that he had yet to receive any medical attention and was in pain.[5] The fact that Gates was seen by medical in early May was relevant to the grievance only to the extent it showed the length of time the prison was continuing to withhold medical care; in other words, the May appointment was not the issue giving rise to the grievance. The Warden/Superintendent's review, the Central Office Appeal, and even counsel in this case, despite the Court's instruction,[6] all failed to recognize the essence of Gates' grievance. Nothing in the record establishes that Gates did not timely grieve the failure to treat his ongoing medical issue.

---

[5] Gates' grievance expressed the following: "Since the above date mentioned, [the 7th, 8th, or the 9th of May 2022,] I've yet to receive any medical attention. I'm in constant pain, and I fear that my foot is not properly healing. Doc. 25-4 at 4.

[6] The Court specifically directed McKenzie to address whether Gates' grievance was timely because he was grieving an ongoing failure to provide medical treatment. Doc. 26. McKenzie ignored this direction entirely, summarily stating that McKenzie's asserted grounds for dismissal should "moot any question concerning timeliness and grieving an ongoing failure to provide medical treatment."

Therefore, for the reasons discussed, McKenzie's motion to dismiss for failure to exhaust is **DENIED**.

**B. Deliberate Indifference**

McKenzie argues that she was not deliberately indifferent to Gates' medical needs.  Doc. 25-1 at 6-7.  To prove a deliberate indifference to medical treatment claim, a plaintiff must show: (1) "an objectively serious medical need"; and (2) "that the prison official acted with deliberate indifference to that need." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004); *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citation omitted).  Further, the condition must be one that would pose a "substantial risk of serious harm" if left unattended. *Farrow*, 40 F.3d at 1243.

Demonstrating a defendant's deliberate indifference, the second element, requires showing a "sufficiently culpable state of mind." *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  To show a sufficiently culpable state of mind, a plaintiff must show that the defendant (i) had subjective knowledge of a risk of serious harm; (ii) disregarded that risk; and (iii) acted by conduct that reflects "subjective recklessness as used in the criminal law." *Id.* (quoting *Farmer*, 511 U.S. at 839).

The criminal law standard finds recklessness "only when a person disregards a risk of harm of which he is aware." *Id.* at 1256 (emphasis omitted) (quotation omitted).

Generalized awareness of a serious medical need is insufficient to state a claim of deliberate indifference. *Id.* at 1258. Thus, to establish deliberate indifference, the "plaintiff must show that the defendant official was subjectively aware that his own conduct—again, his own actions or inactions— put the plaintiff at substantial risk of serious harm." *Id.* A prison official "who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." *Bingham v. Thomas,* 654 F.3d 1171, 1176 (11th Cir. 2011). Finally, "[a]n Eighth Amendment violation may also occur when state officials knowingly interfere with a physician's prescribed course of treatment." *Id*.

McKenzie does not dispute that Gates' fractured foot constitutes a serious medical need. Doc. 25-1. Nor does she deny that she had subjective knowledge of the risk of serious harm. *Id*. Instead, McKenzie argues only that she is entitled to summary judgment because (1) her Declaration makes plain that she always took Gates to medical once requested and (2) McKenzie was not responsible for medical decisions or courses of treatment. Doc. 25-1 at 7-8.

These arguments fail. First, Gates has alleged that he had a serious medical need, which is supported by medical records showing a calcaneal fracture and orders for urgent consultation. Docs. 1 at 5, 22-3 at 2; 23-1 at 2, 13, 89; 25-4 at 18. Second, Gates has alleged that McKenzie was aware of his serious medical need, which McKenzie does not deny or dispute. Doc. 1 at 5; Doc. 25. Gates' medical records further establish that Gates did not receive an orthopedic consultation for three months despite two urgent care orders. Docs. 23-1 at 2, 6, 13, 16, 26-28, 89, 91-92. Finally, McKenzie admits that she was responsible for "taking individuals to medical." Doc. 25-3 at 2. Although McKenzie claims she always took Gates to medical when asked by

Gates, which Gates denies,[7] she does not address his claim that she, as Deputy Warden for Care and Treatment, delayed acting on urgent care orders.[8]  In short, the statements put forth in McKenzie's Declaration are largely irrelevant to the claim at issue.[9]  Based on the evidence, a reasonable jury could find that (i) McKenzie had subjective knowledge of a risk of serious harm; (ii) disregarded that risk; and (iii) acted by conduct that reflects "subjective recklessness as used in the criminal law."  *Id.* (quoting *Farmer*, 511 U.S. at 839).

## IV. CONCLUSION

McKenzie's motion to dismiss for failure to exhaust, or, in the alternative, for summary judgment (Docs. 25; 27) is **DENIED**.

**SO ORDERED**, this 18th day of November, 2024.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[7] At the time of his grievance, Gates alleges that he had "informed [McKenzie] on numerous occasions that [his] broken foot was causing [him] pain" and "she could have made sure [he] was seen by the doctors at ASMP."  Doc. 1 at 5.

[8] The Court cannot, for example, conclude from the record whether McKenzie was responsible for the Utilization Management Decision to approve Gates for local outside services, which was not rendered until August 2, 2022—more than two months after the urgent consultation was ordered.  Doc. 23-1 at 91.

[9] The fact that McKenzie was not a medical professional, and that she "never prohibited Mr. Gates from being sent to ASMP or … ignore[d] any directives from medical staff relating to Mr. Gates," does nothing to resolve the question of unreasonable delay.